IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEONARD SHELTON | ][ | CASE NO. 1:10- cv-00951-AA |
| 8906 Behrwald | ][ | |
| Brooklyn, Ohio 44144 | ][ | JUDGE:  DAN AARON POLSTER |
| | ][ | |
| Plaintiff, | ][ | |
| | ][ | **SECOND AMENDED COMPLAINT** |
| v. | ][ | |
| | ][ | **(Jury Demand Endorsed Hereon)** |
| MICHAEL STEWART | ][ | |
|  12650 Detroit Avenue | ][ | |
| Lakewood, Ohio 44107 | ][ | |
| | ][ | |
| -and- | ][ | |
| | ][ | |
| KENNETH KULCZYCKI | ][ | |
| 12650 Detroit Avenue | ][ | |
| Lakewood, Ohio 44107 | ][ | |
| | ][ | |
| -and- | ][ | |
| | ][ | |
| JOHN DOES 1–5 | ][ | |
| Names Unknown | ][ | |
| | ][ | |
| -and- | ][ | |
| | ][ | |
| CITY OF LAKEWOOD | ][ | |
| c/o Nora Hurley, Law Director | ][ | |
| 12650 Detroit Avenue | ][ | |
| Lakewood, Ohio 44107 | ][ | |
| | ][ | |
| -and- | ][ | |
| | ][ | |
| EDWARD FITZGERALD | ][ | |
| Mayor's Office | ][ | |
| 12650 Detroit Avenue | ][ | |
| Lakewood, Ohio 44107 | ][ | |
| | ][ | |
| -and- | ][ | |
| | ][ | |
| | ][ | |
| | ][ | |
| | ][ | |

KEVIN BUTLER                    ][
Lakewood City Hall             ][
12650 Detroit Avenue           ][
Lakewood, Ohio 44107           ][
                               ][
-and-                          ][
                               ][
BRIAN POWERS,                  ][
Lakewood City Hall             ][
12650 Detroit Avenue           ][
Lakewood, Ohio 44107           ][
                               ][
                Defendants.    ][
                               ][
                               ][
                               ][
                               ][
                               ][

## JURISDICTION AND PARTIES

1.      At all times relevant hereto, Leonard Shelton ("Plaintiff") was a resident of the City of Lakewood, Ohio ("Defendant Lakewood").

2.      At all times relevant hereto, Michael Stewart ("Defendant Stewart") was the Animal Control Officer for Defendant Lakewood.

3.      At all times relevant hereto, Kenneth Kulczycki ("Defendant Kulczycki") and John Does 1-5 ("Defendant Does 1-5") were police officers in Defendant Lakewood.  Despite reasonable attempts to do so, Plaintiff has been unable to discover the names of Defendant Does 1-5.

4.      At all times relevant hereto, Defendants Stewart, Kulczycki, and Does 1-5 were employees of Defendant Lakewood.

5.      At all times relevant hereto, Defendant Edward Fitzgerald ("Defendant Fitzgerald") was the Mayor of Defendant Lakewood.

6.     At all times relevant hereto, Defendant Kevin Butler ("Defendant Butler") and Defendant Brian Powers ("Defendant Powers") were Defendant Lakewood Councilmembers.

7.     Defendants' actions which give rise to this Complaint occurred within the City of Lakewood.

8.     This cause of action arises under Title II of the Americans with Disabilities Act, codified in 42 U.S.C.A. §12101, et seq., 28 C.F.R. §35.130, and 42 U.S.C.A. §§1983 and 1985.

## GENERAL STATEMENT OF FACTS

9.     Plaintiff realleges and reavers the allegations in Paragraphs 1-8 of his Complaint.

10.     Plaintiff is African-American, and at all times relevant hereto, was a resident of Defendant Lakewood and the owner of a dog named Rosco.  Plaintiff owned Rosco prior to the events giving rise to this cause of action.

11.     Title II of the Americans with Disabilities Act, codified in 42 U.S.C.A. §12101, et seq. ("ADA")provides, in relevant part, that "no qualified individual with a disability, shall be reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity".

13.     The ADA defines "qualified individual" as an "individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." §12131(2).

14.	The ADA defines "disability" as a "physical or mental impairment that substantially limits a person's ability to perform one or more major life activity and that limitation is recorded or that individual is regarded as having that disability."  42 U.S.C.A. §12182.

15.	Among other things, the ADA defines major life activities as speaking, learning, reading, concentrating, thinking, communicating, and working.

16.	The ADA defines "service animal" as "any guide dog, signal dog, or other animal individually trained to work or perform tasks for the benefit of an individual with a disability."

17.	To be classified as a "service animal" under the ADA, the animal must be trained to work for the benefit of the disabled individual.  There are no requirements for the specific amount or type of training that a service animal must undergo and no requirement as to the type of work or assistance that a service animal must provide for the benefit of a disabled person.  *Access Now, Inc. v. Town of Jasper, Tennessee*, 268 F.Supp.2d 973, 980 (E.D.Tenn.2003).

18.	On July 23, 2010, the Department of Justice ("DOJ") issued new final rules regarding Title II of the ADA and specifically regarding whether a disabled individual is able to select any breed of dog regardless of their local government's breed specific legislation.  In Appendix A to Part 35 – Guidance to Revisions to ADA Regulation on Nondiscrimination on the Basis of a Disability in State and Local Government Services, the DOJ stated in relevant part:  "[t]he Department does not believe that it is either appropriate or consistent with the ADA to defer to local laws that prohibit certain breeds of dogs…".

19.    The ADA defines "public entity" as "any state or local government; any department, agency, special purpose district, or other instrumentality of a …local government…".  42 U.S.C.A. § 12131.

20.    The federal regulations implementing Title II of the ADA requires public entities, like Defendant Lakewood, to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of a disability, unless the public entity can demonstrate that making the modification would fundamentally alter the nature of the service, program, or activity.  28 C.F.R. §35.130(b)(7).

21.    Section 1983 states that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress".

22.    In or about June or July, 2008, Defendants Lakewood, Fitzgerald, Butler, and Powers, voted to enact and did enact Lakewood Codified Ordinance Section 506, et seq. ("LCO 506"), which among other things, provides that "no person, shall keep, harbor or own any dangerous or vicious animal within the City of Lakewood, or permit any dangerous animal to be kept in the City of Lakewood except in accordance with provisions of Section 506.04".

23.    LCO 506 further provides that "(a) [a]ll pit bull dogs … are deemed to be dangerous animals… (b) [a]s used in this section 'pit bull dog' means any Staffordshire Bull Terrier, American Pit Bull Terrier or American Staffordshire Terrier breed of dog,

any dog of mixed breed which has the appearance and characteristics of being predominately of such breeds, any dog commonly known as a pit bull, pit bull dog or pit bull terrier, or any combination of any of these breeds".

24.     LCO further provides that "[i]n the event of a dispute as to whether or not a dog is a pit bull dog ... the Director of Public Safety or his or her designee shall make the determination with our without a hearing, and the burden of proof that such dog is not a pit bull dog ... shall be upon the owner or custodian.

25.     LCO 506 bans not only "pit bulls", but also bans all dogs that have "the appearance" of being a "pit bull", i.e., bans all dogs that look like "pit bulls", even if those dogs are not actually "pit bulls".

26.     LCO 506 goes further to ban all dogs that look like "pit bulls" if those dogs that look like "pit bulls" were not registered with Defendant Lakewood within a specific period of time.

27.     LCO 506 goes even further to ban all dogs that look like "pit bulls", if those dogs were not living in Defendant Lakewood prior to the enactment of LCO 506 and were not registered within a specific period of time.

28.     After the enactment of LCO 506, all Defendants conspired to, and did in fact, selectively enforce LCO 506 in order to force residents of Defendant Lakewood, whom Defendants considered unsavory or otherwise unfit to reside in Defendant Lakewood, to move out of the city.

29.     Defendants considered African-Americans, individuals with disabilities, individuals with prior criminal records, and others to be unsavory and/or unfit to reside in Defendant Lakewood and used these criteria to selectively enforce LCO 506.

30.    At all times relevant hereto, Defendants Stewart, Kulczycki, and Does 1-5 were responsible for, among other things, identification of certain breeds of dogs, including "pit bulls", enforcement of LCO 506, advising residents how to adhere to the requirements of LCO 506, and advising residents of their rights under LCO 506, including but not limited to, how to establish that his dog is not a "pit bull" and not subject to LCO 506.

31.    At all times relevant hereto, Defendants Lakewood, Stewart, Kulczycki, and Does 1-5 were also responsible to ensuring that they did not violate the constitutional rights and other rights of residents while performing their duties or any other task associated with LCO 506.

32.    Despite the duties and responsibilities of Defendants Stewart, Kulczycki, and Does 1-5, Defendant Lakewood failed to adequately train these Defendants in dog breed identification, failed to adequately train these Defendants in proper enforcement of LCO 506, failed to adequately train these Defendants to advise residents of Defendant Lakewood of their rights under LCO 506, failed to train these Defendants to advise residents how to establish that a dog is not a "pit bull" and not subject to LCO 506, failed to train these Defendants how to fairly and evenly enforce LCO so as to avoid violating the constitutional rights of residents and/or violating the ADA.

33.    In or about April, 2009, while Plaintiff was walking Rosco in Defendant Lakewood, Plaintiff was stopped, on separate occasions, by Defendants Stewart and Kulczycki because, at least in part, Plaintiff is African-American.

34.    During these "stops", Defendants Stewart and Kulczycki, incorrectly, negligently and/or intentionally, maliciously, and with bad faith, identified Plaintiff's dog as a "pit bull" dog, ordered Plaintiff to remove his dog from Defendant Lakewood, threatened

Plaintiff with criminal charges, and indicated that if Rosco was not removed from the Defendant Lakewood as ordered, Rosco would be seized and euthanized.

35.     Defendant Stewart made the determination that Rosco was a "pit bull" after seeing Rosco for just a couple of seconds, without taking the time to visually inspect Rosco, without making any effort whatsoever to physically compare Rosco to actual "pit bulls", without speaking with Rosco's veterinarian about Rosco's breed, and without even speaking with Plaintiff or anyone else in any real detail about Rosco's breed.

36.     Plaintiff immediately informed Defendants Stewart and Kulczycki that his dog is not a "pit bull".  During these interactions, Rosco was well-behaved and friendly to Defendants Stewart and Kulczycki.

37.     Defendant Stewart told Plaintiff that he did not believe Rosco was not a "pit bull" and that there were numerous police officers in the City of Lakewood and Plaintiff would never be able to walk Rosco down the street in Defendant Lakewood without being stopped.

38.     On or about April 18, 2009, Plaintiff received a letter from Defendant Stewart, indicating that Rosco was "a dangerous dog as defined in Chapter 506.03(b) of LCO", by virtue of his being a "pit bull", and that Plaintiff had until May 8, 2009 in which to remove Rosco from Defendant Lakewood.

39.     None of the Defendants ever advised Plaintiff of his legal rights.

40.     None of the Defendants ever advised Plaintiff that LCO 506 expressly provides that "in the event of a dispute as to whether or not a dog is a pit bull dog ... the Director of Public Safety or his designee shall make the determination with or without a hearing, and the burden of proof that such dog is not a pit bull dog ... shall be on the owner or custodian."

41.     Upon information and belief, neither the Director of Public Safety nor his designee made the determination that Rosco is a "pit bull".

42.     Defendants failed to permit Plaintiff to establish that Rosco is not a "pit bull", despite Plaintiff's right to do so under LCO 506, failed to advise Plaintiff that he could request a hearing on the issue, and instead simply threatened Plaintiff with criminal charges and Rosco's euthanization if Plaintiff did not get Rosco out of Defendant Lakewood by the deadline.

43.     Throughout the course of the next several weeks, Defendant Stewart remained steadfast in his opinion that Rosco was a "pit bull", and maintained his position that Rosco must be removed from Defendant Lakewood by the deadline.

44.     At the time Defendant Stewart ordered Plaintiff to remove Rosco from the City of Lakewood, Defendant Stewart was aware that Plaintiff suffered from a mental disability and that Rosco is a service dog.   Specifically, Plaintiff's friend, a PhD, contacted Defendant Stewart within a day or two (2) after the April 17, 2009 initial stop in April, 2009, and advised Defendant Stewart that Plaintiff is a 20-year veteran of the United States Marine Corp. who suffered from PTSD and that Rosco provided therapeutic mental health support and assistance to Plaintiff.

45.     In response to learning that Plaintiff was a War veteran, Defendant Stewart stated that having a war veteran with a mental disability and a "pit bull" was a danger to Lakewood, and that Rosco would be destroyed if not removed from Defendant Lakewood.

46.     Defendants deemed Plaintiff unfit to reside in Defendant Lakewood and discriminated against Plaintiff due to Plaintiff's race as an African-American and due to Plaintiff's mental disability.

47.     As set forth above, Defendants Stewart, Kulczycki, and Does 1-5, under the pretense of enforcing LCO 506, racially discriminated against Plaintiff and discriminated against Plaintiff based on his disability by harassing him with repeated visits, repeated stops on the streets of Defendant Lakewood, repeated "drive-bys" of Plaintiff's home, repeated insistence that Plaintiff's dog is a "pit bull", repeated orders to remove Plaintiff's dog from Defendant Lakewood, repeated threats of criminal charges, and threats of Rosco's seizure and euthanization.

48.     In or about June 2009, Plaintiff had his dog DNA tested and the DNA results confirmed that Plaintiff's dog is not a "pit bull".

49.     Due to Defendants' actions, Plaintiff was forced to temporarily give up Rosco, during which time Plaintiff was forced to live without the assistance and companionship of Rosco.  While without Rosco, Plaintiff suffered from severe anxiety and depression stemming from his PTSD and lack of companionship with Rosco and lack of Rosco's mental health support.

50.     Due to Defendants' actions, Plaintiff was ultimately forced to move from Defendant Lakewood.

51.     Defendants' actions were motivated by Plaintiff's race as an African-American and/or motivated by Plaintiff's disability, and were performed pursuant to a policy and custom of all Defendants in discriminating against African-American residents, disabled residents, and other residents deemed by Defendants to be unfit to reside in Defendant Lakewood, and to ultimately force those residents out of Defendant Lakewood.

## COUNT I:     TITLE II ADA – INTENTIONAL DISCRIMINATION/DISPARATE TREATMENT - DEFENDANT LAKEWOOD

52.     Plaintiff realleges and reavers all allegations set forth in preceding paragraphs.

53.     From 1982 until 1984, Plaintiff served in active duty in the United States Army.

54.     From 1985 until his retirement in 2005, Plaintiff served in active duty in the United States Marine Corps.

55.     Prior to the events giving rise to this cause of action, Plaintiff was diagnosed as having Post Traumatic Stress Disorder ("PTSD"), depression, and/or other mental disabilities caused by his service in the U.S. Military, by at least one licensed healthcare provider.

56.     Prior to the events giving rise to this cause of action, the Veterans Administration deemed Plaintiff 100% disabled due to his service-related PTSD, depression, and other mental health disabilities.

57.     At all times relevant hereto, Plaintiff suffered from PTSD, depression, and/or other mental disabilities, which fall within the definition of a "disability" under the ADA since his mental disabilities cause, among other things, Plaintiff to have difficulty with major life activities such as concentrating, thinking, communicating, and working.

58.     Prior to the events giving rise to this Complaint, including the enactment of LCO 506, Plaintiff acquired Rosco and became Rosco's owner.

59.     At the time Plaintiff acquired Rosco, Plaintiff was told by a licensed veterinarian that Rosco was a Boston Terrier mix.

60.     Prior to the events giving rise to this complaint, Rosco received specific training in order to permit Rosco to assist Plaintiff, provide mental health support/services to Plaintiff, and otherwise work for Plaintiff's benefit.  Rosco was trained by a professional

dog trainer/behaviorist. Rosco also received training as and is currently certified by the American Kennel Club as a Canine Good Citizen.

61.     At all times relevant hereto, Rosco is/was a service animal pursuant to the ADA in that Rosco provided mental health support to Plaintiff by, among other things, assisting Plaintiff with coping with the day-to-day difficulties associated with Plaintiff's disabilities. Specifically, among other things, Rosco assists Plaintiff with concentrating, thinking, communicating, and assists Plaintiff in coping with his depression and anxiety.

62.     At all times relevant hereto, Defendant Lakewood was a public entity bound by Title II of the ADA.

63.     Within a day or two after being stopped by Defendants Stewart and Kulczycki, Plaintiff's friend contacted Defendant Stewart and advised that Plaintiff was a war veteran suffering from PTSD and that Rosco provided mental health support to Plaintiff and otherwise helped Plaintiff with his condition, and further advised that forcing Plaintiff to get rid of Rosco would cause harm to Plaintiff's mental health.

64.     Defendant Stewart replied that an angry war veteran with a pit bull was not right for Defendant Lakewood. Defendant Stewart also replied that there were many police officers in Lakewood and that Plaintiff should expect to be stopped by Lakewood police officers on a regular basis. Defendant Stewart also replied that there was nothing he could do and that Rosco was not permitted to remain in Defendant Lakewood, and that if Rosco remained in Lakewood, he would be seized and destroyed by Defendant Stewart.

65.     Defendants Lakewood, Stewart, Fitzgerald, Butler, and/or Powers have permitted other Lakewood residents, who do not suffer from disabilities, to establish that their dog is not a "pit bull" through veterinary records and/or a letter from a licensed veterinarian.

66.     Defendants Lakewood, Stewart, Fitzgerald, Butler, and Powers have permitted other Lakewood residents, who do not suffer from disabilities, to request and participate in a hearing on the issue of whether their dog is a "pit bull".

67.     Plaintiff was not given the opportunity, or even advised of the possibility, that he could establish Rosco's breed through veterinary records and/or a letter from a licensed veterinarian, nor was Plaintiff ever advised that he could request a hearing on the issue of whether Rosco is a "pit bull".

68.     The actions and statements of Defendants Stewart, Kulczycki, and Does 1-5 were, at least in part, the result of the conspiracy of these Defendants and Defendants Fitzgerald, Butler, and Powers, to selectively enforce LCO 506, in order to force those with disabilities to move from Defendant Lakewood, and were undertaken in order to discriminate against Plaintiff, in whole or in part, based upon his disability.

69.     As a result of the actions, statements, and conspiracy of Defendants, Plaintiff was forced to live without Rosco from approximately April 19, 2009 through June 17, 2009 and completely deprived of the mental health support that Rosco provided and Plaintiff desperately needed.

70.     As a result of being without Rosco, the symptoms associated with Plaintiff's PTSD and depression worsened and Plaintiff became severely depressed, anxious, paranoid, and sad, which required hospitalization.

71.     During this time, Plaintiff was suffering so severely from his PTSD and depression that he was unable to leave his home, other than to seek hospitalization, and as a result was denied and/or effectively denied access to all programs, services, and activities of Defendant Lakewood, including but not limited to, the hearing process on the issue of whether Rosco is a "pit bull".

72.     As a resident of Lakewood, Rosco's owner, and an individual ordered to get rid of Rosco by Defendant Stewart, Plaintiff was eligible for, and in fact, entitled to a hearing by Defendant Lakewood under LCO 506 on the issue of Rosco is a "pit bull".

73.     In addition to being denied meaningful access to all programs, services, and activities of Defendant Lakewood, Plaintiff was otherwise discriminated against by Defendant Lakewood on the basis of is disability as set forth above.

74.     As a result of the actions and statements of Defendants, Plaintiff's rights and protections under the ADA were violated, and Plaintiff has suffered economic, psychological, and other compensable damages.

### COUNT II:     TITLE II ADA REASONABLE MODIFICATION – DEFENDANT LAKEWOOD

75.     Plaintiff realleges and reavers all allegations set forth in preceding paragraphs.

76.     At all times relevant hereto, Plaintiff was a qualified individual under the ADA in that Plaintiff was diagnosed as having PTSD, depression, and/or other mental health disabilities caused by his service in the U.S. Military, by at least one licensed healthcare provider, and has been deemed 100% disabled by the Veterans' Administration.

77.     Some of the many symptoms of Plaintiff's PTSD are that he feels abandoned, isolated, and lonely; he has impaired concentration, difficulty feeling close to, attaching to, and trusting others.

78.     Soon after acquiring Rosco, Plaintiff became very attached to Rosco.  Plaintiff trusts and feels very close to Rosco.  Rosco gave/gives Plaintiff a reason to get out of bed each day, walk Rosco in the neighborhood or take him to the park, and interact with others, including veterinarians, dog trainers and other dog owners.

79.     The connection and bond between Plaintiff and Rosco cannot be duplicated by simply getting another dog of any breed, and as such, the mental health support that Rosco provides to Plaintiff cannot be duplicated by another dog regardless of breed.

80.     Within a day or two after being stopped by Defendants Stewart and Kulczycki, Plaintiff's friend contacted Defendant Stewart and advised that: (a) Plaintiff was a war veteran suffering from PTSD; (b) Rosco provided mental health support to Plaintiff and otherwise helped Plaintiff with his condition; and (c) forcing Plaintiff to get rid of Rosco would cause harm to Plaintiff's mental health.  Plaintiff's friend also requested that an exception be made to LCO 506 for Plaintiff so Plaintiff could keep Rosco.

81.     During this conversation, Defendant Stewart admitted that during his interaction with Rosco and Plaintiff, Rosco sat quietly and seemed to be a nice dog.

82.     Defendant Stewart stated that there was nothing he could do and Rosco must be removed from Defendant Lakewood or he would be seized and euthanized.

83.     A public entity, like Defendant Lakewood, is required to make reasonable modifications in its policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of a disability, unless Defendant Lakewood can demonstrate that making the modification would fundamentally alter the nature of the service, program, or activity.  28 C.F.R. §35.130(b)(7).

84.     The purported reason for LCO 506 is to protect the public from being bitten by so-called dangerous dogs.

85.     Creating an exception to LCO 506 to permit Rosco to remain in Defendant Lakewood, regardless whether Rosco is a "pit bull", would have been a reasonable modification since Rosco is a trained, well-behaved, friendly dog that poses no danger to the public.

86.     In fact, Defendant Stewart admitted to Plaintiff's friend that, during his interaction with Plaintiff, Rosco seemed like a nice dog and was well-behaved.

87.     Defendants could have determined if Rosco posed a danger to the public on a case-by-case basis by, among other things, inquiring into his aggression history and having him temperament tested by a professional.  Defendants failed to do either of these things.

88.     For the same reasons, allowing Rosco to remain in Defendant Lakewood would not fundamentally alter the nature of LCO 506, nor contravene the purported purpose of LCO 506.

89.     Despite the above, Defendants refused to make a reasonable modification, by permitting Rosco to remain in Defendant Lakewood, and as such, Plaintiff was denied the services of Rosco for approximately two (2) months and ultimately forced to move from Defendant Lakewood.

90.     Defendants' refusal to make the reasonable modification, by permitting Rosco to remain in Defendant Lakewood, resulted in and deprived Plaintiff of meaningful access to all programs, activities, and services of Defendant Lakewood since Plaintiff's PTSD and other mental health disabilities became so severe that Plaintiff was unable to even leave his home except to seek hospitalization.

91.     Defendants' actions violated the ADA, and as a result, Plaintiff has suffered economic, psychological, and other compensable damages.

## COUNT III: §1983 – EQUAL PROTECTION - DEFENDANT LAKEWOOD

92.     Plaintiff realleges and revers the allegations set forth in Paragraphs 1 – 49 of the Complaint.

93.     Section 1983 prohibits discrimination against an individual based, in whole or in part, on that individual's race.

94.     At all times relevant hereto, Defendants Stewart, Kulczycki, and Does 1-5 were employees of Defendant Lakewood and acting in the course and scope of their employment.

95.     At all times relevant hereto, Defendants Stewart, Kulczycki, and Does 1-5 were responsible for, among other things, identification of certain breeds of dogs, enforcement of LCO 506, advising residents of Defendant Lakewood how to adhere to the requirements of LCO 506, and advising residents including Plaintiff, of his rights under LCO 506, including but not limited to, how to establish that his dog is not a "pit bull" and not subject to LCO 506.

96.     At all times relevant hereto, Defendants Lakewood, Stewart, Kulczycki, and Does 1-5 were also responsible to ensuring that they did not violate the constitutional rights and other rights of residents while performing their duties or any other task associated with LCO 506.

97.     At all times relevant hereto, Defendant Lakewood knew that Defendants Stewart, Kulczycki, and Does 1-5 were identifying certain dogs as "pit bulls", ordering dogs identified as "pit bulls" from Defendant Lakewood, issuing criminal citations to owners of dogs identified as "pit bulls" from Defendant Lakewood, enforcing LCO 506, and interacting with/advising Defendant Lakewood residents, including Plaintiff, regarding rights and procedures under LCO 506.

98.     At all times relevant hereto, Defendant Lakewood had a municipal policy and/or custom of deliberately permitting Defendant Stewart, Defendant Kulczycki, and/or Defendant Does 1-5 to unfairly and unevenly enforce LCO in order to force individuals out of Defendant Lakewood who Defendant Lakewood has judged undesirable or unsavory based upon race, among other things.

99.     Because Defendants Stewart, Kulczycki, Does 1-5, Fitzgerald, Powers, and Butler deemed Plaintiff unfit to reside in the City of Lakewood by virtue of Plaintiff's race, these Defendants permitted and encouraged Defendants Stewart, Kulczycki, Does 1-5, while acting under color of state law, to unfairly and unevenly enforce LCO 506 based, at least in part, upon the race of the dog's owner.

100.    Because Defendants deemed Plaintiff unfit to reside in the City of Lakewood by virtue of Plaintiff's race, Defendants selectively enforced LCO 506 against Plaintiff in order to force Plaintiff to move from Defendant Lakewood, by among other things, refusing to allow Plaintiff an extension of the deadline in which to register Rosco, refusing to advise Plaintiff of his rights under LCO 506, failing to advise Plaintiff that he could request a hearing on the issue of Rosco's breed, and failing to advise Plaintiff that he could establish Rosco's breed by a letter from a licensed veterinarian.

101.    Upon information and belief, Defendants afforded similarly situated white Lakewood residents extensions of the deadline in which to register their "pit bulls", allowed similarly situated white Lakewood residents to keep possession of their "pit bulls" despite being in violation of LCO 506, advised and/or permitted white residents to request and participate in a hearing on the issue of dog breed, and/or otherwise selectively enforced LCO 506 in favor of similarly situated white residents and against African-American residents.

102.   Defendants' actions were motivated by intentional discrimination based upon Plaintiff's race.

103.   Section 1983's prohibition against racial discrimination is a clearly established federal right of which Defendants knew or should have known.

104.   Defendants actions constitute and/or proximately caused a violation of Plaintiff's civil rights under 42 U.S.C. §1983, including but not limited to, Plaintiff's right to equal protection under the law, and as a direct result of Defendant Lakewood's actions, Plaintiff has suffered psychological, emotional, economic, and other compensatory injury.

105.   State remedies available to Plaintiff are inadequate because, among other reasons, Defendants are afforded immunity under O.R.C. §2744.

### COUNT IV:   §1983 – DUE PROCESS - DEFENDANT LAKEWOOD

106.   Plaintiff realleges and reavers all allegations set forth in preceding paragraphs.

107.   Section 1983 prohibits a municipality, such as Defendant Lakewood, from taking the property of an individual without providing that individual substantive and procedural due process.

108.   Dogs are the property of their owners, and as such, owners cannot be deprived of their dogs except for cause and without notice and a hearing at a meaningful time and in a meaningful manner.

109.   At all times relevant hereto, Defendant Lakewood had a municipal policy and/or custom of deliberately permitted Defendant Stewart to deprive dog owners of their constitutional right to due process with respect to their dogs, which consistently resulted in dog owners being deprived of their dogs without due process.

110.    As Rosco's owner, Plaintiff had a legal right to keep Rosco unless and until Plaintiff was afforded appropriate due process.

111.    Defendant Stewart ordered Plaintiff to remove Rosco from Defendant Lakewood or face euthanization of Rosco.

112.    Defendant Stewart never advised Plaintiff of his rights under LCO 506.

113.    Defendant Stewart never advised Plaintiff that he had a right and/or could request a hearing regarding the determination of whether Rosco was a "pit bull".

114.    Plaintiff was not given an opportunity to participate in a hearing or other process by which he could establish Rosco's breed.

115.    Defendant Stewart never advised Plaintiff that a letter from his veterinarian could be used to establish Rosco's breed.

116.    Plaintiff was given no due process by Defendant Lakewood and simply ordered to get rid of Rosco without the opportunity for a hearing or any other process.

117.    Defendant Stewart's actions were committed while Defendant Stewart was in the course and scope of his employment with Defendant Lakewood.

118.    As a result of Defendant Stewart's actions, Plaintiff was deprived of Rosco for approximately two (2) months.

119.    State remedies are inadequate because Defendants are afforded immunity under O.R.C. §2744.

120.    As a result of Defendant's actions, Plaintiff's constitutional right to due process was violated and Plaintiff suffered economic, psychological, and other compensable injuries.

## COUNT V:  §1983 – FAILURE TO TRAIN – DEFENDANT LAKEWOOD

121.    Plaintiff realleges and reavers all allegations set forth in preceding paragraphs.

122.    At all times relevant hereto, Defendants were employees of Defendant Lakewood.

123.    Defendant Lakewood gave Defendants Stewart, Kulczycki, and Does 1-5 the authority and responsibility to enforce LCO 506, which required, among other things, that these Defendants advise Lakewood residents of their rights under LCO 506.

124.    As police officers, Defendants Stewart, Kulczycki, and Does 1-5 had a duty to refrain from violating the constitutional rights of those with whom they come into contact and to otherwise fairly and evenly enforce LCO 506.

125.    Defendant Lakewood knew that Defendants Stewart, Kulczycki, and Does 1-5 were interacting with Lakewood residents on a regular basis regarding LCO 506.

126.    Despite such responsibilities and knowledge, Defendant Lakewood failed to adequately train Defendants Stewart, Kulczycki, and Does 1-5 to, among other things, adequately, properly, and fairly enforce LCO 506, so as to refrain from violating the constitutional rights of residents and failed to train these Defendants to properly advise residents of their rights under LCO 506.

127.    Defendant Lakewood's failure to adequately train Defendants Stewart, Kulczycki, and Does 1-5 and/or to otherwise ensure that these Defendants had the requisite knowledge to adequately, properly, and fairly perform their duties, so as to refrain from violating the constitutional rights of residents, is a policy and custom of Defendant Lakewood which constitutes a deliberate indifference to the rights of persons, including Plaintiff, with whom Defendants Stewart, Kulczycki, and Does 1-5 come into contact.

128. A municipality, like Defendant Lakewood, can be held liable under 42 U.S.C.A. §1983 for constitutional violations resulting from its failure to train municipal employees. *City of Canton v. Harris*, 489 U.S.C. 378, 380 (1989).

129. As a direct and proximate result of Defendant Lakewood's failure to adequately train Defendants Stewart, Kulczycki, and Does 1-5, Plaintiff's constitutional rights to equal protection and due process have been violated and Plaintiff has suffered psychological, emotional, economic, and other compensatory damages.

## COUNT VI: §1983 – EQUAL PROTECTION - DEFENDANTS STEWART AND KULCZYCKI INDIVIDUALLY

130. Plaintiff realleges and reavers all allegations set forth in preceding paragraphs.

131. Section 1983 prohibits discrimination against an individual based, in whole or in part, on that individual's race.

132. At all times relevant hereto, Defendants Stewart, Kulczycki, and Does 1-5 had the authority and responsibility to, among other things: identify certain breeds of dogs including "pit bulls"; order "pit bulls" from Defendant Lakewood; issue criminal citations to owners of dogs identified as "pit bulls"; enforce LCO 506, which bans "pit bulls" from Defendant Lakewood; and advise residents of Defendant Lakewood, including Plaintiff, of their rights under LCO 506.

133. At all times relevant hereto, Defendants Lakewood, Stewart, Kulczycki, and Does 1-5 were also responsible to ensuring that they did not violate the constitutional rights and other rights of residents of Defendant Lakewood while performing their duties or any other task associated with LCO 506.

134. Because all Defendants deemed Plaintiff unfit to reside in Defendant Lakewood by virtue of Plaintiff's race, Defendants Stewart, Kulczycki, and Does 1-5 selectively

enforced LCO 506 against Plaintiff in order to force Plaintiff to move from Defendant Lakewood by, among other things, refusing to allow Plaintiff an extension of the deadline in which to register Rosco, failing to advise Plaintiff of his rights under LCO 506, failing to advise Plaintiff that he could request a hearing regarding Rosco's breed, failing to advise Plaintiff that a letter from a licensed veterinarian could be used to establish Rosco's breed.

135.    Defendant Stewart afforded similarly-situated white Lakewood residents extensions of the deadline in which to register their so-called "pit bulls", allowed similarly-situated white Lakewood residents to keep possession of their "pit bulls" despite being in violation of LCO 506, and/or otherwise selectively enforced LCO 506 in favor of white residents and against Plaintiff.

136.    Defendants' actions were motivated by intentional discrimination based upon Plaintiff's race.

137.    Section 1983's prohibition against racial discrimination is a clearly established federal right about which Defendants knew or should have known.

138.    Defendants actions constitute and/or proximately caused a violation of Plaintiff's civil rights under 42 U.S.C. §1983, including but not limited to, Plaintiff's right to equal protection under the laws, all of which, at all times relevant hereto, were so clearly established that any official in Defendants' position would have clearly understood that they were under an affirmative duty to refrain from their conduct.

139.    Defendants' actions were committed outside the course and scope of Defendants' employment with Defendant Lakewood and/or were committed with malicious purpose, in bad faith, and/or in a wanton and reckless manner.

140.    As a direct result of Defendants' actions, Plaintiff has suffered psychological, emotional, economic, and other compensatory injury.

141.    State remedies available to Plaintiff are inadequate because Defendants are afforded immunity under O.R.C. §2744.

**COUNT VII:    §1983 – DUE PROCESS - DEFENDANT STEWART INDIVIDUALLY**

142.    Plaintiff realleges reavers all allegations set forth in preceding paragraphs.

143.    Section 1983 prohibits a municipality, such as Defendant Lakewood, from depriving an individual of his property without providing that individual with substantive and procedural due process.

144.    Dogs are the property of their owners, and as such, owners cannot be deprived of their dogs except for cause and without notice and a hearing at a meaningful time and in a meaningful manner.

145.    At all times relevant hereto, Plaintiff was the owner of Rosco, and as such, Plaintiff had a legal right to maintain possession Rosco unless and until Plaintiff was afforded both substantive and procedural due process.

146.    Defendant Stewart ordered Plaintiff to remove Rosco from Defendant Lakewood or Rosco would be seized and euthanized by Defendant Stewart.

147.    Defendant Stewart never advised Plaintiff of his rights under LCO 506.

148.    Defendant Stewart never advised Plaintiff that he had a right and/or could request a hearing regarding the determination of whether Rosco was a "pit bull".

149.    Plaintiff was not given an opportunity to participate in a hearing or other process by which he could establish Rosco's breed.

150.    Defendant Stewart never advised Plaintiff that a letter from his veterinarian could be used to establish Rosco's breed.

151.  Plaintiff was given no due process and Defendant Stewart simply ordered Plaintiff to get rid of Rosco without the opportunity for a hearing or any other process.

152.  At all times relevant hereto, Plaintiff's constitutional right to due process was a clearly established federal right about which Defendant Stewart knew or should have known.

153.  Defendant Stewart's actions were committed outside the course and scope of his employment with Defendant Lakewood and/or with malicious purpose, in bad faith, and in a wanton and reckless manner.

154.  As a result of Defendant Stewart's actions, Plaintiff was deprived of Rosco for approximately two (2) months.

155.  As a result of Defendant's actions, Plaintiff's constitutional right to due process was violated and Plaintiff suffered economic, psychological, and other compensable injuries.

### COUNT VIII:   42 U.S.C. Section 1985 – ALL DEFENDANTS - INDIVIDUALLY

156.  Plaintiff realleges and reavers all allegations set forth in preceding paragraphs.

157.  42 U.S.C.A. §1985 protects individuals, including African Americans, from conspiracies by others to violate their civil rights.

158.  Because Defendants deemed Plaintiff unfit to reside in the City of Lakewood by virtue of Plaintiff's race, Defendants Lakewood, Stewart, Kulczycki, Does 1-5, Fitzgerald, Butler, and Powers conspired to selectively enforce LCO 506 against Plaintiff in order to force Plaintiff to move from Defendant Lakewood.

159.  Defendants selectively enforced LCO 506 against Plaintiff by, among other things, refusing to allow Plaintiff an extension of the deadline in which to register Rosco, failing to advise Plaintiff of his rights under LCO 506, failing to advise Plaintiff that he could

request a hearing regarding Rosco's breed, failing to advise Plaintiff that a letter from a licensed veterinarian could be used to establish Rosco's breed, and failing to ensure that Plaintiff's constitutional rights of equal protection and due process were not violated.

160.    The actions of Defendants constitute discrimination and a conspiracy to deprive Plaintiff of his constitutional rights to equal protection, due process, and/or equal privileges and/or equal immunities, and to deprive Plaintiff of his rights under the ADA, and were motivated by Plaintiff's race and/or disability, malice, ill will, and bad faith.

161.    The actions of Defendants were all acts done in furtherance of the conspiracy to deprive Plaintiff of his constitutional right to equal protection and/or equal privileges and/or equal immunities, his constitutional right to due process, and/or other constitutionally protected rights, and/or to discriminate against Plaintiff based on his race and mental disability.

162.    The actions of Defendants were committed outside the course and scope of employment with Defendant Lakewood and/or were committed with malice, in bad faith, and/or in a wanton and reckless manner.

163.    The actions of Defendants as set forth in preceding paragraphs resulted in a violation of Plaintiff's civil rights under 42 U.S.C. §1983, including but not limited to, Plaintiff's right to equal protection under the laws and right to due process.

164.    As a direct result of Defendants' actions, Plaintiff has suffered psychological, emotional, economic, and other compensatory damages.

WHEREFORE, Plaintiff Leonard Shelton, demands judgment against all Defendants.  Plaintiff Leonard Shelton prays for a sum in excess of Twenty Five Thousand & 00/100 Dollars ($25,000.00) on each count, and further prays for attorney's fees, punitive damages, and all other relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Kristi L. Haude*
KRISTI L. HAUDE (0075611)
*Attorney for Plaintiff Leonard Shelton*
316 West Creek Court
Avon Lake, OH  44012
Tele: (440)714-3502
Email:  khaudelaw@aol.com

## JURY DEMAND

A trial by jury is hereby demanded on all issues herein.

*/s/ Kristi L. Haude*
KRISTI L. HAUDE (0075611)
*Attorney for Plaintiff Leonard Shelton*

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2010, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all registered counsel of record and non-represented

parties through the Court's electronic filing system and may be accessed by same.

Respectfully submitted,

*/s/ Kristi L. Haude*
KRISTI L. HAUDE (0075611)
*Attorney for Plaintiff Leonard Shelton*